TRAP ROCK INDUSTRIES, INC., APPELLANTS-RESPON-
DENTS, v. JOHN C. KOHL, NEW JERSEY COMMISSIONER
OF TRANSPORTATION, RESPONDENT-APPELLANT.

Argued January 23, 1973—Decided May 7, 1973.

(1)

Mr. *Alfred L. Nardelli*, Deputy Attorney General, argued the cause for respondent-appellant Kohl (*Mr. Stephen Skillman*, Assistant Attorney General, of counsel; *Mr. George F. Kugler, Jr.*, Attorney General of New Jersey, attorney).

Mr. *Justin P. Walder* argued the cause for appellants-respondents Trap Rock Industries, Inc. (*Mr. Jeffrey Barton Cahn*, on the brief; *Messrs. Schapira, Steiner and Walder*, attorneys).

*Mr. Theodore W. Geiser* argued the cause for *amicus curiae* New Jersey Heavy, Highway and Construction Industry Advancement Fund (*Messrs. Hughes, McElroy, Connell, Foley and Geiser,* attorneys).

PER CURIAM. In *Trap Rock Industries, Inc. v. Kohl,* 59 *N. J.* 471 (1971), *cert.* denied, 405 *U. S.* 1065, 92 S. Ct. 1500, 31 *L. Ed.* 2d 796 (1972), we sustained the action of the Commissioner of Transportation (herein Commissioner) in temporarily suspending Trap Rock Industries, Inc. (herein Trap Rock) from bidding on contracts to be awarded by the Department of Transportation, a principal department of the executive branch of the State government. The suspension followed upon the indictment of Michael J. Stavola, who owns 80% of Trap Rock and is the president and chairman of its Board of Directors. Later Stavola was convicted of bribery and of obstructing justice and was sentenced to a jail term of one to two years. Thereupon proceedings were brought before the Commissioner for the debarment of Stavola, Trap Rock, and three other corporations wholly owned by Stavola. After hearing, an order was entered debarring those respondents for a period of five years from bidding for any contract with the Department of Transportation or with any county or municipality which utilizes or proposes to utilize State funds. The order barred those respondents from subcontracting on any such contracts or from furnishing materials with respect to them. The Appellate Division affirmed the order except insofar as it debarred Stavola and his companies from bidding on county and municipal contracts. 120 *N. J. Super.* 8 (1972). We granted cross-petitions for certification. 62 *N. J.* 81 (1972).

Stavola and his companies complain because the order bars them from participating as materialmen. They say they do not seek to bid on projects of the Department of Transportation but are critically interested in supplying trap rock and related products for such jobs. Although the question

whether a debarment order could preclude participation as a subcontractor or as a materialman was not involved in the first appeal before us, the thesis of our opinion in that matter applies as well if the debarred party seeks either of those subordinate roles. The Appellate Division correctly so held. It is no answer to say the general contractor would remain responsible for the total performance. The threat resides in misbehavior that will be undetected, and the risk of that harm and the need for integrity to insure against it are no less evident when a subcontractor or materialman is morally irresponsible.

It is urged that since the statute does not provide for prequalification of those who furnish materials to a job, it follows that a supplier of materials may not be debarred. That conclusion does not follow. Undoubtedly the Legislature did not provide for prequalification of suppliers because it would be impractical to pass upon the responsibility of all who might seek that role. But it remains for the Commissioner to protect the State's interest in the moral integrity of its suppliers by taking appropriate measures to that end, and one such measure is to bar a supplier of materials when the commissioner learns good reason exists for that action. We note that the Department of Transportation provides in its standard specifications for road and bridge construction that after the execution of the contract, the contractor shall notify the State Engineer promptly of the sources of materials the contractor intends to use.

Stavola and his companies say their debarment as materialmen is fortuitous in that, if Trap Rock had not been prequalified to bid, they would not have been the target of these proceedings. The premise is an assumption that the Commissioner is concerned with moral responsibility in a supplier of materials only if a lack of responsibility is revealed in connection with an effort to be a prime contractor. But we cannot assume the Commissioner would be indifferent to the moral responsibility of those who furnish labor or materials through the general contractor. The Commis-

sioner assures us he will act whenever he has reason to believe that action is warranted. It may be more difficult to ferret out all dishonest suppliers, but the Commissioner cannot on that account ignore what he learns about those who do seek to do business directly with the State.

The New Jersey Heavy, Highway and Construction Industry Advancement Fund, appearing as *amicus curiae,* stresses the need for information as to what suppliers are barred and the full reach of the debarment when materials generated or handled by the suppliers are processed in one way or another by others who are not debarred. Again we must assume that the Commissioner, familiar as he is with the practical aspects of contracting with the State, will make the necessary information available so that prospective bidders and the Stavola companies, too, will know what materials are within and beyond the bar.

■■ We note that Stavola and his companies sought by a petition for rehearing in the Appellate Division to introduce an equal protection issue. The petition for rehearing alleged the Commissioner had not debarred another company which allegedly paid bribes to a public official. That alleged offender is not· a party to these proceedings. The Appellate Division properly declined to accept the issue. To begin with, an equal protection issue is not generated merely by an assertion that someone else was dealt with differently. This must be so unless laws and duties of office can be annulled by a single error in their execution. We, of course, do not assume that the Commissioner was remiss as to that other alleged offender. We do not have the facts. All we have is a naked allegation that there are no relevant differences, with no charge that the Commissioner intended an invidious discrimination. In any event, it is inappropriate to advance the constitutional issue by a petition for rehearing on appeal and in a proceeding to which the other alleged offender is not a party.

We see no substance in the additional points pressed by Stavola and his companies.

The Commissioner appeals from so much of the Appellate Division's judgment as sets aside the debarment with respect to county and municipal contracts. The Appellate Division said it could find no source of power for the Commissioner so to order. The Commissioner's order is limited to contracts with a county or municipality with respect to which State funds are provided for all or a part of the costs of the projects. See *N. J. S. A.* 27:14–1 *et seq.; N. J. S. A.* 27:15–1 *et seq.;* and *N. J. S. A.* 27:13A–1 *et seq.* It is true that such contracts are awarded by local government and that generally local government passes upon the qualifications of its bidders (see Local Public Contracts Law, *L.* 1971, *c.* 198, *N. J. S. A.* 40A:11–1, *et seq.*), but it would be incongrous to deny the Commissioner in this setting the same power and responsibility which are his to protect State funds when he is the contracting authority. The interest of the State in the moral integrity of the contractor is the same in both situations, and the Commissioner is the appropriate one to protect that State interest. The general statutory theme is that the Commissioner shall prescribe the standards and exercise supervision and control of State-aided work, see *N. J. S. A.* 27:13–1; 27:13–15; 27:13A–9; 27:15–1.3; 27:15–1.14, subd. E; and 27:14–13, and although none of those provisions speaks explicitly of the subject of moral responsibility, nonetheless, as we have said, there is an intimate connection between moral integrity and the tangible end-product. Reasonably implicit is the power and obligation of the Commissioner to concern himself with that essential attribute of local public work when State funds are involved.

The judgment of the Appellate Division is reversed in that respect, and the order of the Commissioner is affirmed.

*For reversal*—Chief Justice WEINTRAUB, Justices JACOBS, HALL, MOUNTAIN and SULLIVAN, and Judge LEWIS—6.

*For affirmance*—None.