STATE OF NEW JERSEY, BOARD OF PUBLIC UTILITIES, PLAINTIFF-RESPONDENT, v. HELEN KRAMER SANITARY LANDFILL, D/B/A KRAMER LANDFILL, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 3, 1979—Decided December 18, 1979.

Before Judges ALLCORN, MORGAN and HORN.

*Vincent J. Dotoli* argued the cause for appellant.

*Blossom A. Peretz,* Deputy Attorney General, argued the cause for respondent (*John J. Degnan,* Attorney General of New Jersey, attorney; *Erminie L. Conley,* Assistant Attorney General, of counsel; *Blossom A. Peretz,* on the brief).

The opinion of the court was delivered by

MORGAN, J. A. D.

We consider in this appeal whether the State Board of Public Utilities (BPU or Board) has jurisdiction over the hours during which a landfill, holding a certificate of convenience and necessity, may operate. The landfill would deny BPU that power.

An abbreviated history of this accelerated appeal is necessary to a full understanding of ·what this issue comprehends. On May 7, 1971 the Helen Kramer Sanitary Landfill (the Landfill) applied to BPU for a certificate of public convenience and necessity to operate its landfill. On September 22, 1972 the Landfill filed a tariff with BPU which set forth its rates, hours of operation and miscellaneous additional terms and conditions of its operation. The certificate of public convenience and necessity was issued in March 1976.

In May 1977 the Landfill filed a petition with the BPU seeking modification of its tariff to amend the rate schedule to

reflect the rates actually charged since 1970 and to eliminate an inapplicable rate schedule. At the hearing on this petition held June 21, 1978, the Landfill orally sought a tariff amendment enlarging its hours of operation. On February 22, 1979, the Landfill was advised of a written BPU staff position with respect to the petition for rate change and the oral request for enlargement of the hours of operation. According to this document, the staff authorized the requested change in rates. The staff, however, recommended that the hours not be enlarged—

. . . on the basis of objection received from Mantua Township officials, individual residents, and a member of the Legislature. There was no supporting testimony or exhibits offered at this hearing to justify the request. Staff cannot find any support for the view that the existing hours are a hardship which can only be alleviated by adjusting hours of operation.

By letter dated March 19, 1979 (presumably in anticipation of having their request for a change in operations rejected) the Landfill withdrew its motion to increase its hours of operation. The Board's decision, an order on March 21, 1979, adopted the staff position on rates and, despite the Landfill's attempted withdrawal of the issue of operating hours, adopted the staff position with respect to that matter also. Accordingly, the Landfill was ordered immediately to "cease and desist from operating during hours not presently authorized by the Board." The Landfill appealed from that portion of the order denying extended operating hours.

Subsequent to the filing of the notice of appeal on April 16, 1979, BPU filed a Chancery Division complaint seeking to enjoin the Landfill from operating in contravention of its decision and order of March 21, 1979, imposition of $100 fine a day for noncompliance with the BPU order and interlocutory injunctive relief with respect to that order. After abortive attempts to reach an amicable disposition of the controversy, the trial judge ruled that the Landfill would be required to comply with the operating hours reflected in its filed tariff in accordance with

the Board's order of March 21, 1979. The Landfill's appeal from this trial court order is before us and not the appeal from the BPU order of March 21, 1979.[1]

The essential issue posed is whether BPU is vested with jurisdiction over operating hours of landfills under either *N.J.S.A.* 48:2–13, the provision generally descriptive of the scope of Board jurisdiction, or *N.J.S.A.* 48:13A–1 *et seq.*, the provisions of the Solid Waste Utility Control Act of 1970.

The former, applicable to solid waste collection and disposal, provides:

> The board shall have general supervision and regulation of and jurisdiction and control over all public utilities as hereinafter in this section defined and their property, property rights, equipment, facilities and franchises so far as may be necessary for the purpose of carrying out the provisions of this Title.

> The term 'public utility' shall include . . . sewer, solid waste collection, solid waste disposal, telephone or telegraph system, plant or equipment for public use, under privileges granted or hereafter to be granted by this State or by any political subdivision thereof. [*N.J.S.A.* 48:2–13]

The latter, describing the objectives of Board control of solid waste collection and disposal, reads as follows:

> The Legislature finds and declares that the collection, disposal and utilization of solid waste is a matter of grave concern to all citizens and is an activity thoroughly affected with the public interest; that the health, safety and welfare of the people of this State require efficient and reasonable solid waste collection, disposal and utilization service; that such service will more likely be achieved if the Public Utility Commission is charged with the duty of setting and enforcing standards and rates for regulating economic aspects of solid waste collection, disposal and utilization service; and that the exercise of any power herein provided shall be deemed to be in the public interest and for a public purpose. [*N.J.S.A.* 48:13A–2]

---

[1] The appeal of the BPU decision and order of March 21, 1979 was stayed pursuant to an order entered on October 1, 1979.

The foregoing grants of jurisdiction to the Board have traditionally been liberally construed to grant the widest range of regulatory power over the utilities subject to its jurisdiction. *Bergen Cty. v. Public Util. Dep't*, 117 *N.J.Super.* 304 (App.Div. 1971). *Deptford Tp. v. Woodbury Ter. Sewerage Corp.*, 54 *N.J.* 418, 424 (1969). Pursuant to plenary rule-making power granted by *N.J.S.A.* 48:2–12 and 48:13A–4, the Board promulgated rules requiring the filing of tariffs, consisting of "the standard terms and conditions governing service," *N.J.A.C.* 14:11–7.3, and which "shall continue in force until legally changed," *N.J.A.C.* 14:11–7.2(b). It was in response to these regulations that the Landfill initially filed its tariff which included a description of its hours of operations in unmistakable and unequivocal terms:

> *Hours of Operation.* The solid waste disposal utility shall, during the period from May 1 to September 30 be open for business during the hours of 6:00 A.M. to 6:00 P.M. prevailing time Monday thru Saturday; and during the period from October 1 to April 30 be open for business from 7:00 A.M. to 4:30 P.M. prevailing time Monday thru Saturday. The solid waste disposal utility shall be closed Sunday and the holidays of Thanksgiving, Christmas, New Years, Labor Day, Memorial Day and Fourth of July. The solid waste disposal utility reserves the right to begin operation prior to the hours set forth and continue operation after the hours set forth to comply with the rules and regulations of the Department of Environmental Protection and/or Chapter 8, New Jersey State Sanitary Code.

By its March 1979 order and the subsequent Chancery Division suit, BPU sought enforcement of the Landfill's compliance with the operating hours announced in its tariff. The Landfill insists that it need not comply with this aspect of its filed tariff or, in the alternative, is free to amend its tariff at will and to alter the hours announced therein. Because no statute or regulation expressly requires that a filed tariff set forth the Landfill's hours of operations, a voluntary description of such matter does not, according to the Landfill, bind it to compliance therewith.

■ None of the statute from which BPU's scope of jurisdiction must be derived expressly deals with the question of operating hours. Decisional law is silent and legislative history is not helpful. Nonetheless, we are not entirely adrift. We interpret the statutory grant of jurisdiction broadly to provide regulatory control reasonably associated with those aspects of BPU activity specifically within the agency's delegated authority. We do that to avoid compromising agency capacity to accomplish its assigned tasks. For example, BPU is given the task of insuring, or at least enhancing, the efficiency of solid waste collection and disposal. *N.J.S.A.* 48:13A–2. To that end, landfill operators must obtain a certificate of necessity and convenience as an essential prerequisite to their operation. *N.J. S.A.* 48:13A–6. Existing need and levels of performance in a given municipality or region must be known to the Board and public and within the former's control if it is to insure efficient rendition of collection and disposal services. *In re Mason,* 134 *N.J.Super.* 500 (App.Div.1975). Clearly, the Board's responsibility does not begin and end with rate regulation. A utility permitted operation under a certificate must be accountable to the Board for a certain level of performance. Such supervision clearly embraces hours of operation and changes thereto. The Board recognized this in its adoption of *N.J.A.C.* 14:11–7.2, which requires each utility to file with the Board tariffs applicable to its affected service area, and in *N.J.A.C.* 14:11–7.3, which requires the filed tariff to disclose the "standard terms and conditions governing service . . . ." Such rules are presumptively valid and the Landfill has not, in our view, met its burden of demonstrating their invalidity. See *Bergen Cty. v. Public Util. Bd. Comm'rs,* 137 *N.J.Super.* 448, 455 (App.Div. 1975). Certainly, the Landfill failed to challenge these requirements when, in its filed tariff, it set forth in unequivocal terms the hours it would be operating its collection site.

■ Of course, once the tariff was filed it became law governing the utility's operation, with which the utility was

bound to comply. *In re Saddle River's Application,* 71 *N.J.* 14 (1976); *Valentine v. Eastern Airlines, Inc.,* 144 *N.J.Super.* 305, 308–309 (App.Div.1976). The Landfill itself recognized the binding effect of this provision of its tariff when it orally sought permission to change its hours of operation. That it withdrew the request before the Board passed on it did not, contrary to the Landfill's contention, deprive the Board of jurisdiction to enforce the Landfill's compliance with the terms of its own filed tariff.

We are not persuaded by the Landfill's contention that its described hours of operation do not include service for contract customers. If that were so, then the commitment to certain hours of operation would be entirely illusory, a service contract being all that would be necessary to operate for as many hours as the contracting parties, rather than public need, require.

Our conclusion that BPU has jurisdiction over a landfill's operating hours does not, however, insulate actions taken pursuant to that jurisdiction from appellate review. Arbitrary or capricious rejection of applications to amend filed tariffs with respect to operating hours is as subject to reversal as is any other such agency action. In this matter the Landfill has never sought a hearing with respect to its desire to enlarge hours of operation. Fearing lack of success in this endeavor, it chose to withdraw its request and never adduced evidence in its support. It now undertakes to argue to us, without a record, why the change in operating hours should be permitted. Such advocacy should be instead directed to BPU after a fully developed record which would, in the event of unfavorable BPU action, become subject to our review.

Affirmed.