IN THE MATTER OF THE ALLEGATIONS OF VIOLATIONS OF LAW AND RULE BY INTER COUNTY REFUSE SERVICE, INC., AND LOUIS SPIEGEL, INDIVIDUALLY.

Superior Court of New Jersey
Appellate Division

Submitted September 21, 1987—Decided January 21, 1988.

Before Judges J.H. COLEMAN, O'BRIEN and HAVEY.

*Vincent J. Dotoli* and *Pitney, Hardin, Kipp & Szuch,* attorneys for appellants (*Vincent J. Dotoli* and *Murray J. Laulicht* on the brief).

*W. Cary Edwards,* Attorney General of New Jersey, attorney for respondent (*James J. Ciancia,* Assistant Attorney General, of counsel; *George W. Fisher,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

COLEMAN, J.H., P.J.A.D.

The novel issue raised by this appeal is whether a transfer of all the stock in a public utility engaged in the solid waste collection business, without prior approval of the Board of Public Utilities (BPU), is violative of the Solid Waste Control Act, *N.J.S.A.* 48:13A–1 *et seq.* and implementing regulations. The BPU concluded that the stock transfer was void. The BPU

revoked Inter County's certificate of public convenience and necessity to provide collection service in the solid waste industry and prohibited its president Louis Spiegel individually from future participation in the solid waste industry. We now affirm the order of the BPU.

I

## PROCEDURAL AND FACTUAL BACKGROUND

The crucial facts are not in serious dispute. On October 21, 1980 Inter County, its president Louis Spiegel, two trade associations of solid waste collectors and numerous other defendants were indicted by a State Grand Jury. The indictment charged that the named defendants and unindicted co-conspirators "knowingly engaged in a combination and conspiracy in unreasonable restraint of the business of providing garbage collection service to customers" in violation of the New Jersey Antitrust Act, *N.J.S.A.* 56:9–3. At the conclusion of a lengthy jury trial, Inter County, Louis Spiegel, Anthony Scioscia and Home and Industrial Disposal Service were found guilty of fourth degree conspiracy to restrain trade and commerce. On July 29, 1983 Inter County was sentenced to pay a fine of $15,000. On the same day, Spiegel was sentenced to a suspended custodial term of 18 months [1] and three years of probation with the special condition that he serve 200 hours of community service. He was also fined $10,000. The convictions were based on appellant's and other co-conspirator's participation in an unlawful customer allocation agreement whereby members acquired "property rights" which permitted them to provide garbage collection services to specific locations without competition. The conspiracy was implemented through the New Jersey Trade Waste Association which assigned specific collection areas to specific collectors and these designations became "property rights." *See State v. Scioscia,* 200 *N.J.Super.* 28,

---

[1] A suspended sentence is not an authorized disposition under the Code of Criminal Justice. *See N.J.S.A.* 2C:43–2.

32–33 (App.Div.1985), certif. den. 101 *N.J.* 277 (1985). Appellants' judgments of conviction were affirmed by us on March 20, 1985 in an unpublished opinion.

While the criminal appeal was pending, the BPU issued an order on December 20, 1983 to Inter County to show cause why its certificate of public convenience and necessity should not be revoked based on its conviction for violating *N.J.S.A.* 56:9–3. The BPU contended that the criminal convictions also established a violation of the anti-monopoly provision of the Solid Waste Utility Control Act, *N.J.S.A.* 48:13A–10 and a regulation promulgated pursuant thereto, *N.J.A.C.* 14:3–10.12. The matter was transmitted to the Office of Administrative Law for a hearing. On November 20, 1984 the BPU made a motion before the ALJ to amend the show cause order to include Spiegel individually as a party. The amendment sought to prohibit Spiegel from managing, owning or participating in any solid waste business organization within the State. The requested amendment was granted. After the BPU had rested its case before the ALJ, Inter County and Spiegel made motions to dismiss the order to show cause. These motions were denied in a letter opinion of ALJ Naomi Dower–LaBastille dated January 23, 1985.

On October 1 and 2, 1985 Inter County and Spiegel presented evidence before the ALJ on their behalf. During that phase of the hearing before the ALJ, Arthur Stryker, a business partner of Spiegel in other corporate ventures, testified that he became president of Inter County on January 1, 1985. He also testified that he and his wife, Deborah Stryker, purchased from Louis Spiegel and his wife, Mary Spiegel, all of the stock in Inter County on February 1, 1985; each acquired 50% without prior approval of the BPU. Appellants proffered expert testimony of an antitrust expert respecting the market power of appellants, but that evidence was not considered by the ALJ. The expert's testimony, however, was taken as an offer of proof to preserve the record for appeal. At the conclusion of the hearing before the ALJ appellants sought summary judgment based on Stryk-

er's testimony respecting the divestiture of Spiegel and the new ownership of Inter County. Appellants also made an "offer of judgment" based on Spiegel's representation that he would refrain from engaging in any solid waste collection business in New Jersey. Both the request for summary judgment and the "offer of judgment" were rejected by the ALJ.

On December 20, 1985 the ALJ issued her initial decision in which she concluded that the transfer of Inter County's stock was void. She also concluded that Inter County and Spiegel "attempted to monopolize and conspired with other persons to monopolize the provision of solid waste collection services to the New Jersey service area over which they had been assigned exclusive property rights in violation of [the Solid Waste Utility Control Act] N.J.S.A. 48:13A–10a." The ALJ found that appellants had agreed with other collectors to limit bidding or withdraw from a specific location or territory to eliminate competition, which conduct also violated N.J.A.C. 14:3–10.12. The ALJ recommended that (1) Inter County's certificate of public convenience and necessity be revoked, (2) each appellant be fined $500 which should be deemed satisfied by the extra discovery cost associated with the BPU's staff redefinition of relevant market, (3) Spiegel be barred from participation in the solid waste industry, and (4) Inter County submit to the BPU a list of all customers serviced by it.

On April 25, 1986, the BPU issued its final decision and order adopting the initial decision of the ALJ except that appellants were not permitted to satisfy the fines by their increased discovery costs. This appeal was filed on May 12, 1986. The Supreme Court on July 3, 1986 stayed the revocation of Inter County's certificate of public convenience and necessity pending disposition of this appeal.

## II

### MAJOR LEGAL CONTENTIONS AND DISPOSITIONS

In this appeal appellants contend that the BPU "erred in ruling that the transfer of stock from the Spiegels to the

Strykers violated *N.J.S.A.* 48:3–10 and *N.J.A.C.* 14:3–10.13(a) because it [the stock transfer] was made without Board approval." Essentially, appellants argue that the stock transfer did not require BPU approval under *N.J.S.A.* 48:3–10, *N.J.A.C.* 14:3–10.13(a) or *N.J.S.A.* 48:3–7. They argue that when the BPU issued its final decision and order on April 25, 1986, Spiegel no longer held any interest in Inter County because his 99% stock ownership and his wife's 1% ownership had been transferred to Arthur Stryker and his wife, Deborah, such that each held 50% of Inter County's stock. Thus any legal impediment of Spiegel could not be attributed to the corporate holder of the certificate.

In its final decision and order, the BPU found the stock transfer was void because Spiegel failed to first obtain the BPU approval for the transfer. In so holding the BPU relied upon two statutes and a regulation: *N.J.S.A.* 48:3–10, *N.J.S.A.* 48:3–7 and *N.J.A.C.* 14:3–10.13(a). According to appellants, a 1978 BPU decision, *In the Matter of the Petition of Twin County Disposal, Inc. For Approval of Stock Transfer*, Docket No. 782–138 (BPU August 18, 1978) specifically found that *N.J.S.A.* 48:3–10 would not apply where a majority interest was not transferred to any one person, as occurred in the present case. Appellants contend that the BPU cannot now depart from its holding in the *Twin County* case. They further contend that *N.J.S.A.* 48:3–7 does not apply because the Spiegel–Stryker transaction was between stockholders, not between public utilities to which that statute applies. Finally, appellants claim that *N.J.A.C.* 14:3–10.13(a) cannot be interpreted any more broadly than the statutes upon which it was based; therefore, since neither *N.J.S.A.* 48:3–7 nor *N.J.S.A.* 48:3–10 applied to appellants, the regulation is not applicable.

The BPU, on the other hand, contends that appellants' assertion that they relied on *Twin County* when the Spiegels transferred all of the stock in Inter County to the Strykers without the approval of the BPU is disingenuous. Nothing in the record suggests that the Spiegels relied on *Twin County* when

the transfer occurred. On the contrary, when the transfer occurred, Spiegel was aware that the BPU approval for a proposed transfer of Inter County's stock to H & M Disposal Service Co., Inc. had been sought pursuant to *N.J.S.A.* 48:3–10 and that the BPU was to entertain the petition on a deferred basis. The stock transfer occurred soon after the Supreme Court deferred the BPU's action on H & M Disposal's petition and soon after the BPU sought to preclude Louis Spiegel from participating in the solid waste industry. Furthermore, the BPU distinguishes *Twin County* on its facts: *Twin County* did not consider *N.J.A.C.* 14:3–10.13(a), and there was a continued maintenance of ownership interest in the public utility by one of the transferors whereas in the present case there has been a transfer of all of the stock. The BPU contends that even if *N.J.S.A.* 48:3–10 and *N.J.A.C.* 14:13–10.13(a) do not require the BPU approval prior to stock transfer, *N.J.S.A.* 48:3–7 does require such approval especially where there is a 100% transfer of interest because the franchise or right to operate as a solid waste disposal utility is also transferred.

The BPU decision in the *Twin County* case is not binding on us. While this court generally respects an agency's expertise, ultimately, interpretation of statutes and regulations is a judicial, not an administrative function. *Mayflower Securities Co. v. Bureau of Securities,* 64 *N.J.* 85, 93 (1973). Suffice it to say that based on our decision today, *Twin County* should have been decided in light of *N.J.A.C.* 14:3–10.13(a) and not based strictly on *N.J.S.A.* 48:3–10.

Inter County was issued a certificate of public convenience and necessity pursuant to the Solid Waste Utility Control Act of 1970, *N.J.S.A.* 48:13A–6, and *N.J.A.C.* 14:3–10.6, to engage in the solid waste collection business. The Solid Waste Utility Control Act *N.J.S.A.* 48:13A–1, *et seq.* extended the general regulatory authority of the BPU over public utilities to solid waste collectors, *L.* 1970, *c.* 40, § 4, *N.J.S.A.* 48:2–13, and specifically conferred rulemaking authority upon the BPU respecting the public utility aspects of the solid waste collection

industry. *See L.* 1970, *c.* 40, § 5, *N.J.S.A.* 48:13A–4. *See also Matter of Scioscia,* 216 *N.J.Super.* 644 (App.Div.1987), certif. den. 107 *N.J.* 652 (1987); *State v. Scioscia, supra,* 200 *N.J.Super.* at 36. In furtherance of its supervisory function over a public utility licensed to operate as a solid waste collector, the BPU found that the transfer of 100% of Inter County's stock violated *N.J.S.A.* 48:3–7 and *N.J.A.C.* 14:3–10.13(a).

The pertinent provisions in *N.J.S.A.* 48:3–7 provide:

*a.* No public utility shall, without the approval of the board, sell, lease, mortgage *or otherwise dispose of* or encumber its property, franchises, privileges or rights, or any part thereof; or merge or consolidate its property, franchises, privileges or rights, or any part thereof, with that of any other public utility.

        *        *        *        *        *        *        *        *

Every sale, mortgage, lease, *disposition,* encumbrance, merger or consolidation *made in violation of this section shall be void.* (emphasis added)

The pertinent provision in *N.J.S.A.* 48:3–10 provides:

No public utility incorporated under the laws of this State shall sell, nor shall any such public utility make or permit to be made upon its books any transfer of any share or shares of its capital stock, to any other public utility, unless authorized to do so by the board. Nor shall any public utility incorporated under the laws of this State sell any share or shares of its capital stock or make or permit any transfer thereof to be made upon its books, to any corporation, domestic or foreign, or any person, the result of which sale or transfer in itself or in connection with other previous sales or transfers shall be to vest in such corporation or person a majority in interest of the outstanding capital stock of such public utility corporation unless authorized to do so by the board.

Every assignment, transfer, contract or agreement for assignment or transfer, by or through any person or corporation to any corporation or person in violation of any of the provisions hereof shall be void and of no effect, and no such transfer shall be made on the books of any public utility corporation. Nothing herein contained shall be construed to prevent the holding of stock lawfully acquired before March 5, 1935.

*N.J.A.C.* 14:3–10.13, which cites *N.J.S.A.* 48:3–7, *N.J.S.A.* 48:3–9 and *N.J.S.A.* 48:3–10 as its authority, provides:

(a) No sale or transfer of assets of a solid waste collection or solid waste disposal utility or any change in majority control of such utility shall be consummated without prior authorization of the Board. Filings for authority shall be in accordance with Sections 6.10 (Petitions for the approval of the sale or lease of property) and 6.14 (Petitions for authority to transfer capital stock) of Chapter 1 of this Title.

The BPU argues that it adopted *N.J.A.C.* 14:3–10.13(a) pursuant to the grant of authority by the Legislature. This regulation is implicated in this appeal and it is presumptively valid. *New Jersey Guild of Hearing Aid Dispensers v. Long*, 75 *N.J.* 544, 561 (1978). Because *N.J.A.C.* 14:3–10.13(a) is based on the BPU's interpretation of *N.J.S.A.* 48:3–7, 9, and 10 which it is charged with enforcing, the BPU's interpretation is entitled to great weight. *In re Application of Saddle River*, 71 *N.J.* 14, 24 (1976). A regulation of a state administrative agency that has been "duly promulgated under properly delegated powers" has the force and effect of law. *State v. Atlantic City Electric Co.*, 23 *N.J.* 259, 270 (1957). Even though the BPU has been granted "the widest range of regulatory power over public utilities," *Deptford Tp. v. Woodbury Terrace Sewerage Corp.*, 54 *N.J.* 418, 424 (1969), its regulations must nonetheless fall within the parameters established by the legislature. Based on the broad regulatory and supervisory jurisdiction conferred upon the BPU by the legislature, we are persuaded that the presumption of validity accorded *N.J.A.C.* 14:3–10.13(a) has not been rebutted.

After a careful study of the voluminous appellate record, it appears that subsequent to the BPU's final decision of April 25, 1986, a hearing may have been conducted to determine all the facts and circumstances surrounding the transfer of stock from the Spiegels to the Strykers. The Supreme Court's order of July 3rd, 1986 provided that "The Board of Public Utilities may proceed to determine the validity of the transfer of shares of stock of Inter County from Louis Spiegel and Mary Spiegel to Arthur Stryker and Deborah Stryker...." The record before us leaves unanswered too many important questions such as the source of the funds used to purchase Mrs. Stryker's stock, whether she has a real interest in the corporation, whether she simply holds the stock in her name to avoid application of *N.J.S.A.* 48:3–10 and whether the entire transfer was an attempt by Louis Spiegel to frustrate the purpose of the amended show cause order issued on December 17, 1984 against Spiegel

individually. In view thereof we decline to decide whether *N.J.S.A.* 48:3-10 is applicable to this case.

We are nonetheless persuaded that *N.J.S.A.* 48:3-7(a) controls the transfer of all of Inter County's stock held by the Spiegels to the Strykers. The statute proscribes the disposition of a public utility's "property, franchises, privileges or rights" without prior approval by the BPU. *N.J.S.A.* 48:2-13 defines public utility to include "every individual, ... corporation ... that now or hereafter may own, operate, manage or control within this State any ... solid waste collection, solid waste disposal ... under privileges granted ... by this State...." *N.J.S.A.* 48:2-13 further provides that the BPU shall have supervisory and regulatory jurisdiction over both the public utility and the public utility's "property, property rights, equipment, facilities and franchises so far as may be necessary for the purpose of carrying out the provisions of this Title." Under the foregoing definition of public utility, both Inter County and its president Louis Spiegel who owned 99% of Inter County's stock and who also operated, managed and controlled Inter County, were subject to the provision of *N.J.S.A.* 48:3-7. Consequently, Louis Spiegel's sale of his 99% stock interest in Inter County was a disposition of the property of a public utility engaged in the solid waste collection business. The stock was property of Spiegel who owned, operated and controlled Inter County which by statute made the transfer of his stock a disposition of a public utility's property within the meaning of *N.J.S.A.* 48:3-7. Hence, the disposition was subject to supervisory jurisdiction of the BPU. We therefore fully agree with the BPU when it stated:

> Moreover, *N.J.S.A.* 48:3-7 requires that there be Board approval before a utility can dispose of or encumber its "property, franchises, privileges or rights, or any part thereof" and that any such transfers made without Board approval are void. *N.J.S.A.* 48:3-7 has special applicability in the case of a closely held solid waste utility where 100% of the company's ownership and implicitly the company's privilege, franchise, or right to operate is transferred to new owners. Here, the Spiegel's have transferred the entire company to the Strykers without Board approval, and this transfer is thus void pursuant to the above Statute.

So viewed, the applicability of *N.J.A.C.* 14:3–10.13(a) becomes clear. Any sale or transfer of a solid waste collection or disposal utility's assets, in order to be valid, must have prior authorization of the BPU. Whether the sale or transfer consists of a majority control, or anything less than a majority, and regardless of to whom the transfer is made, the prior authorization requirement of that administrative code provision is applicable.

A similar interpretive and analytical approach was taken in *Public Utilities Bd. v. Helen Kramer San. Landfill,* 171 *N.J.Super.* 500 (App.Div.1979). There, the question was whether the BPU had jurisdiction over the hours during which a landfill, holding a certificate of convenience and necessity, could operate. The BPU ordered the landfill to adhere to certain operating hours. The landfill appealed from the BPU's denial of its petition to extend its operating hours. On appeal it contended the BPU lacked jurisdiction to regulate the operating hours of landfills. The Appellate Division disagreed. *Id.* at 503–504. Pointing first to *N.J.S.A.* 48:2–13, which describes the scope of the BPU's very broad jurisdiction and the description of the objectives of the BPU control of solid waste collection and disposal found in the Solid Waste Utility Control Act, *N.J.S.A.* 48:13A–2, the court observed that these grants of jurisdiction to the BPU "have traditionally been liberally construed to grant the widest range of regulatory power over the utilities subject to its jurisdiction." *Id.* at 505. The court then went on to hold:

> None of the statute from which BPU's scope of jurisdiction must be derived expressly deals with the question of operating hours. Decisional law is silent and legislative history is not helpful. Nonetheless, we are not entirely adrift. We interpret the statutory grant of jurisdiction broadly to provide regulatory control reasonably associated with those aspects of BPU activity specifically within the agency's delegated authority. We do that to avoid compromising agency capacity to accomplish its assigned tasks. [*Id.* at 506].

The same rationale applies to the present case. Although *N.J.S.A.* 48:3–7 does not expressly deal with stock transfers, given the clear legislative mandate that the BPU exercise

detailed control over solid waste collection and disposal utilities, interpreting that statute to include ownership or stock transfers where the transfer is made by the individual who owns, manages, or controls the utility is totally consistent with legislative mandate and policy. The regulation which expressly states this principle, *N.J.A.C.* 14:3–10.13(a), and which was enacted to implement *N.J.S.A.* 48:3–7, is thus a valid exercise of the BPU's rulemaking authority. Hence, the BPU correctly decided that the Spiegel to Stryker stock transfer was void.

It would indeed be ironic if a public utility and its managing owner could circumvent the extensive regulatory and supervisory jurisdiction of the BPU by a divestiture of ownership of the corporate holder of the certificate of public convenience and necessity without first requiring the BPU to decide whether the new owners are qualified "to engage ... in the business of solid waste collection...." *N.J.S.A.* 48:13A–6. *See also N.J.A.C.* 14:3–10. To adopt appellants' argument would completely ignore the vital public interest in the solid waste industry which the Legislature has recognized. When *N.J.S.A.* 48:13A–1 *et. seq.* was passed in 1970 the solid waste industry "was fraught with the potential for abuse in the form of favoritism, rigged bids, official corruption, and the infiltration of organized crime." *In re Application of Saddle River, supra,* 71 *N.J.* at 22. Clearly, *N.J.A.C.* 14:3–10.13(a) was promulgated pursuant to legislative authority to help "clean-up" the solid waste collection and disposal industry.

### III

### OTHER CONTENTIONS

Inter County contends that once Louis Spiegel transferred his stock in Inter County, the corporation purged itself of its wrongdoer who gave direction and management to it and therefore the corporate certificate should not have been revoked based on *Trap Rock Industries, Inc. v. Kohl,* 59 *N.J.* 471 (1971), *cert.* den. 405 *U.S.* 1065, 92 *S.Ct.* 1500, 31 *L.Ed.*2d 796

(1972); 63 *N.J.* 1 (1973) (affirming debarment of *Trap Rock*); and *Trap Rock Industries, Inc. v. Sagner,* 133 *N.J.Super.* 99, 108 (App.Div.1975), aff'd 69 *N.J.* 599 (1976). In view of our conclusion that the stock transfer was a nullity, the moral turpitude of Spiegel continues to infect Inter County. Furthermore, the *Trap Rock* cases should be distinguished on the facts. As the ALJ observed the *Trap Rock* cases did not involve participants who were regulated and licensed by statute. Also, the corporation involved in the *Trap Rock* cases was only convicted of filing a false income tax return for 1970 and the individual's conviction (Michael J. Stavola) was unrelated to the corporation's business. *See Trap Rock, supra,* 69 *N.J.* at 601. Here, the participants were highly regulated and licensed in accord with the legislative mandate because the solid waste industry is strongly affected with the public interest.

Appellants also contend that the BPU lacks statutory authority to impose a lifetime debarment on Louis Spiegel. In the alternative, it is argued that the lifetime prohibition is unreasonable in the circumstances. These contentions lack merit for the same reasons we expressed in *Matter of Scioscia, supra,* 216 *N.J.Super.* at 655–661. The BPU has the implied authority to exclude individuals from the solid waste collection business without the necessity of a prior written regulation to that effect.

Appellants further contend that the BPU's definition of the relevant market was too narrow and that the evidence did not support the BPU's determination that appellants possessed a dangerous probability of success of monopolizing the specific areas over which they had been assigned exclusive "property rights" in customers. As we observed in the *Matter of Scioscia, supra,* 216 *N.J.Super.* at 653–654, the indictment, the judgment of conviction and the inferences drawn therefrom sufficiently support the BPU's conclusion that appellants engaged in a conspiracy to monopolize solid waste collection in violation of *N.J.S.A.* 48:13A–10a and *N.J.A.C.* 14:3–10.12. The

relevant market area adopted by the BPU was correctly based on our conclusions in *State v. Scioscia, supra,* 200 *N.J.Super.* at 32–33 and *State v. Louis Spiegel & Inter County Refuse Service, Inc.,* A–191–83T4, slip op. at 2–3 (App.Div. March 20, 1985). After relevant market area was defined to mean each specific location within the public utility's tariffed service area for which the public utility had been assigned exclusive "property rights" through the conspiracy, expert evidence of appellants' probabilities of success of monopolizing the specific area was irrelevant. A *per se* monopoly was created by the appellants, co-conspirators and the trade waste associations.

■ ,Finally, appellants contend that *N.J.A.C.* 14:3–10.12 is invalid. The regulation provides:

> No solid waste collection or solid waste disposal utility shall agree with any other utility or person to limit bidding or withdraw from the specific territory or endeavor to eliminate competition.

This regulation is derived from *N.J.S.A.* 48:13A–10a which provides:

> a. No person shall monopolize, or attempt to monopolize, or combine or conspire with any other person to monopolize, trade or commerce in any relevant market, located in whole or in part in this State, for the solid waste collection business or the solid waste disposal business.

We reject appellants' contention. Clearly, their conduct which formed the basis for the criminal convictions also constituted a violation of *N.J.A.C.* 14:3–10.12. They conspired and limited bidding in the solid waste collection business by assigning "property rights" in designated areas. "Consequently, even if there were some ambiguity in the meaning of the antimonopoly provisions of *N.J.S.A.* 48:13A–10a, *N.J.A.C.* 14:3–10.12 reasonably interprets these provisions to prohibit collusive bidding, allocation of customers and related anticompetitive conduct by solid waste collectors." *Matter of Scioscia, supra,* 216 *N.J.Super.* at 653.

We have considered all other contentions raised by appellants and find they are clearly without merit. *R.* 2:11–3(e)(1)(D) and

(E). The final decision and order of the BPU dated April 25, 1986 is therefore affirmed.

Affirmed.