IN THE MATTER OF THE APPLICATION FOR A DECLARATORY RULING PURSUANT TO N.J.S.A. 48:3–10 AND N.J.A.C. 14:3–10.13(A).

Superior Court of New Jersey
Appellate Division

Argued May 22, 1989—Decided June 9, 1989.

140

Before Judges J.H. COLEMAN and BAIME.

*Nathaniel H. Yohalem,* and *Joseph Rosa, Jr.* argued the cause on behalf of appellants Zajac Disposal, National Solid Wastes Management Association and New Jersey Waste Management Association (*Gutterman, Wolkstein, Klinger & Yohalem,* attorneys; *Riccardelli & Rosa,* attorneys; *Nathaniel H. Yohalem, Joseph Rosa, Jr.* and *Kathleen M. Gialanella* on the brief).

*Kevin P. Auerbacher,* Deputy Attorney General, argued the cause on behalf of respondents (*Peter N. Perretti, Jr.,* Attorney General, attorney; *Andrea M. Silkowitz,* Assistant Attorney General, of counsel; *Kevin P. Auerbacher* on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

Appellants National Solid Wastes Management Association, New Jersey Waste Management Association and Zajac Disposal appeal from a declaratory ruling rendered by the Board of Public Utilities (BPU) and a subsequent determination denying their motion for reconsideration. We affirm.

The salient facts are not in dispute and are essentially a matter of public record. On August 18, 1978, the BPU issued its formal opinion in *In the Matter of the Petition of Twin County Disposal, Inc. for Approval of Stock Transfer,* Docket No. 782-138 (BPU August 18, 1978 (*Twin County*), holding that only utility stock transfers which result in the vesting of a majority interest in one person or entity requires prior Board approval under *N.J.S.A.* 48:3-10.[1] The BPU's decision was

---

[1]That section reads in pertinent part as follows:

No public utility incorporated under the laws of this State shall sell, nor shall any such public utility make or permit to be made upon its books any transfer of any share or shares of its capital stock, to any other public utility, unless authorized to do so by the board. Nor shall any public utility incorporated under the laws of this State sell any share or shares of its capital stock or make or permit any transfer thereof to be made upon its books, to any corporation, domestic or foreign, or any person, the result

without reference to *N.J.S.A.* 48:3–7(a) [2] and *N.J.A.C.* 14:3–10.-13.[3] Approximately eight years later, on April 25, 1986, the BPU rendered its opinion in *Matter of Inter County Refuse Serv.*, Docket No. 3312–114, (*Inter County*) where it held that transfers of utility stock to one or more shareholders which result in a change in majority interest require Board approval under *N.J.S.A.* 48:3–7(a), *N.J.S.A.* 48:3–10, and *N.J.A.C.* 14:3–10.13(a).

On February 5, 1987, appellants filed a petition with the BPU requesting a declaratory ruling that *Inter County*'s requirement of prior Board approval could not be applied retroactively. Although ambiguously phrased, appellants also sought a ruling that *Inter County*'s change of policy concerning the need for

---

of which sale or transfer in itself or in connection with other previous sales or transfers shall be to vest in such corporation or person a majority in interest of the outstanding capital stock of such public utility corporation unless authorized to do so by the board.

Every assignment, transfer, contract or agreement for assignment or transfer, by or through any person or corporation to any corporation or person in violation of any of the provisions hereof shall be void and of no effect, and no such transfer shall be made on the books of any public utility corporation. Nothing herein contained shall be construed to prevent the holding of stock lawfully acquired before March 5, 1935.

[2]That section states:

a. No public utility shall, without *the approval of the board,* sell, lease, mortgage *or otherwise dispose of* or encumber its property, franchises, privileges or rights, or any part thereof; or merge or consolidate its property, franchises, privileges or rights, or any part thereof, with that of any other public utility.

\* \* \* \* \* \* \* \*

Every sale, mortgage, lease, disposition, encumbrance, merger or consolidation *made in violation of this section shall be void.* (emphasis added).

[3]That rule provides:

(a) No sale or transfer of assets of a solid waste collection or solid waste disposal utility or any change in majority control of such utility shall be consummated without prior authorization of the Board. Filings for authority shall be in accordance with Sections 6.10 (Petitions for the approval of the sale or lease of property) and 6.14 (Petitions for authority to transfer capital stock) of Chapter 1 of this Title.

Board approval could be effectuated only by rule-making consistent with the requirements of the Administrative Procedure Act (*N.J.S.A.* 52:14B–1 *et seq.*). Because the BPU's determination in *Inter County* was pending appeal, appellants' petition was placed on the inactive list.

On January 21, 1988, we upheld the BPU's opinion in *Inter County*. *Matter of Inter County Refuse Serv.*, 222 *N.J.Super.* 258 (App.Div.1988), app. dism. 114 *N.J.* 485 (1989). There, we held that *N.J.S.A.* 48:3–7(a) and *N.J.A.C.* 14:3–10.13(a) require prior Board approval as a prerequisite to the transfer of a majority interest in a utility even where the shares are distributed to more than one person or entity. 222 *N.J.Super.* at 264. While we found that *N.J.A.C.* 14:3–10.13(a) was consistent with and statutorily authorized by *N.J.S.A.* 48:3–7, –9 and –10, 222 *N.J.Super.* at 267, we declined to decide whether *N.J.S.A.* 48:3–10, standing alone, required Board approval in such a case. 222 *N.J.Super.* at 268. In the course of our opinion, we specifically considered and rejected the proposition that the BPU could not depart from its holding in the *Twin County* case. 222 *N.J.Super.* at 264. We noted that an administrative interpretation of a statute or rule was entitled to respect, but was "not binding on us." 222 *N.J.Super.* at 265. Following our opinion, the Supreme Court granted certification. 111 *N.J.* 618 (1988). However, the appeal was subsequently dismissed at the request of the parties. 114 *N.J.* 485 (1988).

After reinstating appellants' petition on active status, the BPU rendered its declaratory ruling on May 12, 1988. Citing our opinion in *Matter of Inter County Refuse Serv.*, *supra,* and a similar unpublished Appellate Division decision, *Piccini Sanitation, Inc. v. New Jersey Board of Public Utilities*, A–227–86T6 (June 24, 1987), the BPU found "no bar to enforcement of ... statutory and regulatory requirements [of Board approval] pertaining to utility stock transfers." However, the BPU recognized that "particular circumstances may present mitigating factors which will temper ... enforcement actions." Because no specific facts were alleged, the BPU deemed it "inappropri-

ate to address hypothetical situations" but instead "reserve[d] the right to [consider] each case on its own merits as it arises." On July 13, 1988, the BPU denied appellants' motion for reconsideration.

It is argued on appeal that the BPU's decision in *Inter County* should be applied prospectively, because numerous utilities reasonably relied upon the prior determination in *Twin County* which, as we have noted, held that prior Board approval was unnecessary with respect to the transfer of a majority interest to more than one person or entity. Citing *Rutherford Educ. Ass'n v. Bd. of Educ.*, 99 *N.J.* 8 (1985); *Kelly v. Gwinnell*, 96 *N.J.* 538 (1984); *Jersey Shore, Etc. v. Estate of Baum*, 84 *N.J.* 137 (1980); *Darrow v. Hanover Tp.*, 58 *N.J.* 410 (1971) and *Oxford Consumer Dis. of N. Phila. v. Stefanelli*, 104 *N.J.Super.* 512 (App.Div.1969), appellants assert that it would be unreasonable to apply the new interpretation of the statutes and rule announced in *Inter County* to parties who placed reliance on *Twin County* 's prior inconsistent view of the need to obtain Board approval. They also claim that retroactive application of *Inter County* can be effectuated only by administrative rule-making.

We find no merit in these contentions. Initially, we point out that the BPU's determination in *Twin County* rested solely on its interpretation of *N.J.S.A.* 48:3–10. No reference was made to the provisions of *N.J.S.A.* 48:3–7(a), or *N.J.A.C.* 14:3–10.13(a). Whatever doubts one might harbor with respect to the parameters of regulatory jurisdiction conferred by *N.J.S.A.* 48:3–10, the provisions of *N.J.S.A.* 48:3–7(a), and more importantly certainly those of *N.J.A.C.* 14:3–10.13(a), rather clearly say that a transfer of a majority interest to one or more persons or entities requires prior Board approval. *See Matter of Inter County Refuse Serv., supra,* 222 *N.J.Super.* at 268–269.

Nevertheless, we agree with appellants that the BPU's determination in *Twin County* plainly sent the wrong signal to utilities pertaining to whether prior Board approval was neces-

sary. If the BPU were to blindly apply its later inconsistent decision in *Inter County* in blanket fashion to all those who reasonably relied upon *Twin County*'s erroneous interpretation, thereby causing a major disruption of service and wholesale destruction of the regulated community's legitimate expectations, judicial intervention of some sort would perhaps be warranted. However, the simple and overriding fact is that the BPU has not in any sense taken that position. While recognizing that it has no right to nullify a legislative policy embodied in a statute or to administratively render nugatory an opinion of this court, the BPU has stated in clear and explicit terms that its enforcement policy will be tempered by whatever mitigating factors are presented.

Subsequent administrative developments have disclosed that the BPU's expression that mitigating circumstances will be considered was not an idle gesture. In its recent decision in *In the Matter of the Petition of Modern Disposal Service, Inc. for Authority, Nunc Pro Tunc to Transfer Ownership of its Common Stock Upon its Books and Records*, Docket No. SM85050574 (BPU December 8, 1988) (Modern Disposal), the BPU stated:

> In *Zajac Disposal* (Docket No. S0 87020114), this Board determined that it would decide on a case by case basis whether to temper its enforcement actions based upon mitigating circumstances in cases involving utility stock transfers undertaken without prior Board approval. In this case the petitioner acted in good faith to ascertain the applicable law concerning proposed stock transfers before signing the stock purchase agreement and relied on this Board's prior decision in *Twin County Disposal* (Docket No. 782–138) in doing so. Moreover, petitioner filed the petition promptly after realizing that its original understanding of the understanding of the law was inconsistent with this Board's current policy. Under these circumstances and in the absence of evidence of efforts to avoid Board enforcement such as occurred in *Inter County Refuse Service, Inc.* (Docket No. 10134–83) *aff'd* 222 *N.J.Super.* 258 (App.Div.1988), or other aggravating circumstances, waiver of penalties would be appropriate. Therefore, the Board HEREBY WAIVES penalties.

Against this backdrop, it is clear that the BPU has, and will continue, to consider a party's reliance on *Twin County* as a mitigating factor tempering its enforcement policy. Moreover, any uncertainty as to the validity of a prior transfer can easily

be alleviated by the avenue suggested in the BPU's decision in *Modern Disposal.* Specifically, the BPU's approval can be sought by filing a petition for a transfer *nunc pro tunc.* In our view, the policy expressed by the BPU in its declaratory ruling, as augmented in its decision in *Modern Disposal,* represents a fair reconciliation of the competing interests involved. We thus perceive no sound basis for judicial intervention.

Equally without merit is appellants' argument that the BPU's enforcement policy can be effectuated only by way of the administrative rule-making process. The operative standards for determining whether rule-making requirements apply to or govern an agency decision or particular agency action were exhaustively reviewed by our Supreme Court in *Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313 (1984). More recent decisions by the Supreme Court, *see Woodland Private Study Group v. State,* 109 *N.J.* 62, 67 (1987); *In the Matter of the Request for Solid Waste Utility Customer Lists,* 106 *N.J.* 508, 517–518 (1987), and by this court, *see American Cyanamid v. Dep. Envir. Prot.,* 231 *N.J.Super.* 292, 305–306 (App.Div.1989); *Board of Education v. Cooperman,* 209 *N.J. Super.* 174 (App.Div.1986), aff'd 105 *N.J.* 587 (1987); *Radiological Society v. N.J. State Dept. of Health,* 208 *N.J.Super.* 548, 558–560 (App.Div.1986), have amplified the appropriate criteria. We thus perceive no need to retread upon ground so recently and thoroughly covered in these cases. Suffice it to say, we can well understand why determinations relating to reasonable reliance and other mitigating factors inherent in the BPU's enforcement policy can best be considered through the administrative adjudicative process. Administrative agencies must possess the ability to be flexible and responsive to the particular needs of the public and those of the regulated community. *Texter v. Human Services Dep't.,* 88 *N.J.* 376, 385 (1982). This flexibility "includes the [discretion] to select those procedures most appropriate to enable the agency to implement legislative policy." *Ibid.* While this discretion is not unlimited, we defer

to the choice made so long as the selection is responsive to the purpose and function of the agency.

Accordingly, the declaratory ruling of the BPU rendered on May 12, 1988 and its subsequent decision denying reconsideration are affirmed.